TERESA ELSHOFF, Petitioner v. NORTH CAROLINA BOARD OF NURSING, Respondent

No. COA07-599

(Filed 18 March 2008)

**Nurses— disciplinary action—evidence of willfulness insufficient**

Petitioner's motion to dismiss disciplinary actions against her by the Board of Nursing should have been granted where there was no evidence that her search for her patient's Oxycodone was for the purpose of or intent of harassing, abusing, or intimidating the patient, as required by statute and administrative rule. An act of patient care is not converted into a willful act of harassment, abuse, or intimidation solely because the patient becomes upset.

Appeal by petitioner from order entered 8 March 2007 by Judge John R. Jolly, Jr. in Superior Court, Wake County. Heard in the Court of Appeals 15 November 2007.

*Patrice Walker for petitioner-appellant.*

*Allen and Pinnix, P.A. by M. Jackson Nichols and Mary B. Shuping for respondent-appellee.*

STROUD, Judge.

Petitioner appeals order of the superior court affirming the decision and order of the North Carolina Board of Nursing which issued petitioner a letter of reprimand, required petitioner to complete course work, and issued petitioner a probationary license. The dispositive question before this Court is whether the North Carolina Board of Nursing erred in not granting petitioner's motion to dismiss for the insufficiency of the evidence because respondent failed to show petitioner *willfully* violated any rules enacted by the North Carolina Board of Nursing. For the following reasons, we reverse and remand.

## I. Background

Petitioner was a registered nurse who was providing home care to patient B.T. Petitioner alleged the following: B.T. had recently been released from a hospital. Petitioner first saw B.T. on or about 11 August 2004 and conducted a medication profile, a physical exam, and a patient interview. B.T. was 81 years old and was taking several prescription medications, including a psychotropic medication, Seroquel, which is used to treat schizophrenia. On or about 13 August 2004, petitioner called B.T. and told her that she realized she did not have B.T.'s medication profile and asked to come to B.T.'s home to retrieve it. When petitioner arrived at B.T.'s home, a neighbor, Ms. Cook, opened the door and escorted petitioner inside the home.

Ms. Cook, the Board's sole witness to the interaction, testified that petitioner looked in the den and then B.T. suggested that petitioner look on the kitchen table. Petitioner went in the kitchen and opened drawers and cabinets, looking inside them. Petitioner then went to look in the living room and when B.T. objected, petitioner came out of the living room.

Petitioner testified that when she arrived at B.T.'s home, she noticed that B.T.'s Oxycodone was not with her other medications. Petitioner alleged she began searching through B.T.'s home because she was concerned about the missing Oxycodone as B.T. might be taking it inappropriately. Petitioner testified she was unable to find

**ELSHOFF v. N.C. BD. OF NURSING**

[189 N.C. App. 369 (2008)]

the missing medication. After petitioner's visit, B.T. was extremely upset and afraid for other medical personnel to visit her home.

On or about 25 February 2005, petitioner received a letter from the North Carolina Board of Nursing ("Board") which stated petitioner "may not be safe and competent to practice nursing or [she] may have violated the Nursing Practice Act." The letter went on to state that petitioner's "actions in [B.T.'s] home threatened and intimidated the patient." The letter gave petitioner the option to have an administrative hearing, have a settlement conference, or to be issued a "letter of reprimand" and a probationary license.

An administrative hearing was scheduled for 27 October 2005. Petitioner made motions to dismiss at the outset of the hearing, at the close of respondent's case, and at the close of all of the evidence; all three motions were denied. On or about 27 October 2005, the Board ordered petitioner to be issued a "letter of reprimand," to complete an ethical/legal decision making course with emphasis on therapeutic communications within three months, and to be issued a probationary license.

On or about 9 March 2006, petitioner filed an amended petition for judicial review in Superior Court, Wake County and also requested the matter be remanded to the Board with instructions to dismiss the charges. On 8 March 2007, the superior court, *inter alia*, denied petitioner's motion to remand and affirmed the decision of the Board. Petitioner appeals.

## II. Willfulness

Petitioner assigns error to the Board's denial of her motion on the insufficiency of the evidence as respondent failed to show petitioner *willfully* violated any rules enacted by the Board pursuant to N.C. Gen. Stat. § 90-171.37. We agree.

The Board argues that "[i]t is absolutely the role of the [Board] to determine from the evidence of Record whether Appellant's search for the missing medication had a harassing or intimidating *effect* on Patient B.T." (emphasis added). Thus, the Board essentially contends that if petitioner's actions had a "harassing or intimidating effect" on B.T., petitioner has violated 21 N.C. Admin. Code 36.0217(c)(10), even if there is no evidence that petitioner willfully intended to harass or intimidate B.T. and even if petitioner's actions were in keeping with her assigned job duties. The Board also argues that the Court should give deference to the Board's interpretation of its own rules, *see Best*

*v. N.C. State Bd. of Dental Examiners*, 108 N.C. App. 158, 162, 423 S.E.2d 330, 332 (1992) (citation omitted), *disc. rev. denied*, 333 N.C. 461, 428 S.E.2d 184 (1993), and thus uphold the Board's final decision and order.

"A review of whether the agency decision is supported by the evidence, or is arbitrary or capricious, requires the court to employ the whole record test." *Walker v. N.C. Dept. of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990), *disc. rev. denied*, 328 N.C. 98, 402 S.E.2d 430 (1991).

> When the trial court applies the whole record test . . . it may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter *de novo*. Rather, a court must examine all the record evidence—that which detracts from the agency's findings and conclusions as well as that which tends to support them—to determine whether there is substantial evidence to justify the agency's decision. Substantial evidence is relevant evidence a reasonable mind might accept as adequate to support a conclusion.

*N.C. Dep't. of Env't and Natural Res. v. Carroll*, 358 N.C. 649, 660, 599 S.E.2d 888, 895 (2004) (internal citations and internal quotations omitted).

N.C. Gen. Stat. § 90-171.37 allows the Board to discipline licensees "in any instance or instances in which the Board is satisfied that the . . . licensee . . . [h]as willfully violated any rules enacted by the Board." N.C. Gen. Stat. § 90-171.37(8) (2003). "Behaviors and activities which may result in disciplinary action by the Board include . . . harassing, abusing, or intimidating a client either physically or verbally[.]" 21 N.C. Admin. Code 36.0217(c)(10).

"Willfully[,]" as used in N.C. Gen. Stat. § 90-171.37, is not specifically defined; however, the term "willful" and its derivatives has been defined several times within other contexts by the legislature and the judiciary. *See generally* N.C. Gen. Stat. § 58-40-5(7) (2007) (" 'Willful' means in relation to an act or omission which constitutes a violation of this Article with actual knowledge or belief that such act or omission constitutes such violation and with specific intent to commit such violation."); *Sawyer v. Food Lion, Inc.*, 144 N.C. App. 398, 403, 549 S.E.2d 867, 870 (2001) ("Willful conduct is done with a deliberate purpose."); *Brewer v. Harris*, 279 N.C. 288, 296, 182 S.E.2d 345, 350 (1971) ("An act is done willfully when it is done purposely and delib-

erately in violation of law . . . or when it is done knowingly and of set purpose, or when the mere will has free play, without yielding to reason.") (internal citations and internal quotations omitted); *State v. Arnold*, 264 N.C. 348, 349, 141 S.E.2d 473, 474 (1965) (" 'Wil[l]ful' as used in criminal statutes means the wrongful doing of an act without justification or excuse, or the commission of an act purposely and deliberately in violation of law.").

Black's Law Dictionary defines "willful" as

[p]roceeding from a conscious motion of the will; voluntary. *Intending the result which actually comes to pass; designed; intentional; not accidental or involuntary.*

[a]n act or omission is 'willfully' done, if done voluntarily and intentionally and with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law.

*Black's Law Dictionary* 1434 (5th ed. 1979) (emphasis added).

Therefore, to survive petitioner's motion to dismiss based upon the insufficiency of the evidence, the Board must present evidence that petitioner willfully committed actions or said words with the purpose or intent to harass, abuse, or intimidate a client either physically or verbally and that the client was actually harassed, abused, or intimidated. *See* N.C. Gen. Stat. § 90-171.37; N.C. Admin. Code 36.0217(c)(10); *see generally*, N.C. Gen. Stat. § 58-40-5; *Sawyer at* 403, 549 S.E.2d at 870; *Brewer* at 296, 182 S.E.2d at 350; *Arnold* at 349, 141 S.E.2d at 474; *Black's Law Dictionary* 1434.

In the present case, there is no dispute that B.T. was very distressed after petitioner's visit. However, the subjective effect of one person's actions upon another individual is not the test for willfulness. The trial court took no new evidence, but affirmed the Board's conclusions including:

The act of opening drawers and cabinets; and going in and out of rooms through the patient's home, visibly upset Patient B.T. Ms. Elshoff ignored Patient B.T.'s reaction to her search and by doing so, intimidated Patient B.T.

The act of opening drawers and cabinets; and going in and out of rooms through the patient's home violates the patient's privacy and space; and this act constitutes harassment.

**ELSHOFF v. N.C. BD. OF NURSING**

[189 N.C. App. 369 (2008)]

The licensee has violated G.S. 90-171.37(8) in that she did willfully violate Regulation 21 N.C.A.C. 36.0217(c)(11)[1] in the manner found below.

The licensee did willfully violate Regulation 21 N.C.A.C. 36.0217(c)(11) in that she did harass or intimidate a client, either physically or verbally, as evidenced by the fact that during Ms. Elshoff's second visit to Patient B.T., she was opening drawers and cabinets, and going in and out of rooms through the patient's home which visibly upset Patient B.T.; and she ignored Patient B.T.'s reactions to this search, and by doing so, intimidated Patient B.T.

The licensee did willfully violate Regulation 21 N.C.A.C. 36.0217(c)(11) in that she did harass, abuse or intimidate a client, either verbally or physically, as evidenced by the fact that during Ms. Elshoff's second visit to Patient B.T.'s home, she was opening drawers and cabinets, and going in and out of rooms in the patient's home, violating the patient's privacy and space; therefore, these acts constitute harassment.

The evidence is uncontroverted that petitioner willfully opened drawers and cabinets and otherwise searched in B.T.'s home for the Oxycodone. However, no evidence was presented to support a finding that petitioner's search for the medication was for the purpose or intent to harass, abuse, or intimidate B.T., which is required pursuant to N.C. Gen. Stat. § 97-171.37 and N.C. Admin. Code 36.0217(c)(10). *See* N.C. Gen. Stat. § 97-171.37; N.C. Admin. Code 36.0217(c)(10). *N.C. Dep't. of Env't and Natural Res.* at 660, 599 S.E.2d at 895. There is not substantial evidence that petitioner acted willfully, i.e., "with specific intent to commit [a] violation," "without justification or excuse," "purposely and deliberately in violation of law" or "[i]ntending the result which actually [came] to pass." *See* N.C. Gen. Stat. § 58-40-5(7); *N.C. Dep't. of Env't and Natural Res.* at 660, 599 S.E.2d at 895; *Brewer* at 296, 182 S.E.2d at 350; *Arnold* at 349, 141 S.E.2d at 474; *Black's Law Dictionary* 1434.

---

1. We assume that (11) is a typographical error in the order, as pursuant to the language of the conclusions it is clear that the Board found petitioner to have violated 21 N.C.A.C. 36.0217(c)(10) which is "harassing, abusing, or intimidating a client either physically or verbally" rather than 21 N.C.A.C. 36.0217(c)(11) which is "failure to maintain an accurate record for each client which records all pertinent health care information as defined in Rule .0224(f)(2) or .0225(f)(2)[.]" *See* 21 N.C. Admin. Code 36.0217(c)(10)-(11) (2003).

ELSHOFF v. N.C. BD. OF NURSING

[189 N.C. App. 369 (2008)]

We cannot conclude that "opening drawers and cabinets and going in and out of rooms through a patient's home" constitutes willful harassment, abuse, or intimidation of a patient, where there is no evidence that the petitioner performed these actions with any intent to harass, intimidate, or abuse the client in any way. Some evidence of purposefulness, deliberateness, intent, or the like on the part of petitioner to harass, abuse, or intimidate B.T. must be shown in order to find petitioner "willfully violated any rules enacted by the Board." *See* N.C. Gen. Stat. § 90-171.37(8); *see generally* N.C. Gen. Stat. § 58-40-5; *Sawyer at* 403, 549 S.E.2d at 870; *Brewer* at 296, 182 S.E.2d at 350; *Arnold* at 349, 141 S.E.2d at 474; *Black's Law Dictionary* 1434.

As a home health care nurse, petitioner was dealing with an elderly and perhaps confused patient who became extremely upset by petitioner's actions, yet there is no evidence that petitioner's actions were willfully intended to harass, abuse, or intimidate B.T. In fact, one of petitioner's job duties was to keep track of B.T.'s medications, for B.T's own benefit and protection. It would be no different if B.T. had become upset because petitioner had performed a painful but necessary medical service upon B.T., such as giving B.T. an injection; B.T. may have in fact felt that she was abused, but a "willful" act of caring for a patient is not converted into a willful act of harassment, abuse, or intimidation solely because, as a result or effect of the wilful act, the patient becomes upset. None of the evidence, nor even the Board's findings of fact, supports a conclusion that petitioner acted willfully to harass, abuse, or intimidate B.T. Petitioner's motion to dismiss based upon the insufficiency of the evidence should have been granted.

### III. Conclusion

For the foregoing reasons, we reverse and remand to the Superior Court, Wake County for further remand to respondent to dismiss its proceeding against petitioner. As we are reversing the trial court order it is unnecessary to address petitioner's remaining assignments of error.

REVERSED AND REMANDED.

Judges TYSON and JACKSON concur.